**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradley Ronsick, | No. CV-24-03331-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Epic Motorsports Corporation, et al., | |
| Defendants. | |

Pending before the Court is Defendant Kenda Rubber (China) Co.'s ("Chinese Kenda") motion to dismiss Plaintiff Bradley Ronsick's complaint for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6), (Doc. 5), which Defendant American Kenda Rubber Industrial Co. ("American Kenda" and, collectively, the "Kenda Defendants") joined as to the Rule 12(b)(6) arguments, (Doc. 7). For the following reasons, the Kenda Defendants' motion is **granted**.[1]

## I.    FACTUAL BACKGROUND

In May 2021, Rosnick purchased a 2010 Can-Am Spyder Motorcycle.  (Doc. 1-3 ¶ 12.)[2]

On October 31, 2021, Ronsick was in a highway rollover accident after the motorcycle's rear tire "suddenly and without warning suffered a trea[d]/belt separation."

---

[1]    Chinese Kenda's request for oral argument, (Doc. 5), is denied because the issues are fully briefed and oral argument would not aid the Court's decision process.  *See* LRCiv 7.2(f).

[2]    Ronsick's Second Amended Complaint ("SAC") is the operative complaint.  (*See* Doc. 1-3; *see also* Doc. 1 at 2; Doc. 5 at 2.)

(*Id.* ¶¶ 13–15.)  Ronsick was "transported from the scene and to the emergency room where he underwent treatment" and was hospitalized for approximately three weeks.  (*Id.* ¶ 18.)  Although Ronsick wore a helmet, he was "seriously and permanently injured."  (*Id.* ¶ 17.)

Ronsick alleges that the tire, which was "manufactured at Defendant Kenda's Kunshan, Jiangsu, China tire plant," was defective.  (*See id.* ¶ 16.)

## II.    PROCEDURAL HISTORY

On November 3, 2023, Ronsick filed this action in Maricopa County Superior Court.  (Doc. 1-1 at 2, 8.)  Ronsick's operative claims against the Kenda Defendants are for strict products liability and negligence.  (*See* Doc. 1-3 ¶¶ 19–30.)

On November 22, 2024, American Kenda removed Ronsick's action to this Court under diversity jurisdiction, arguing that removal was not available until Ronsick had dismissed other defendants that destroyed jurisdiction.  (*See* Doc. 1 at 2–4.)

On November 27, 2024, Chinese Kenda filed the motion, (Doc. 5), which American Kenda joined the same day, (Doc. 7).  On January 20, 2025, Ronsick responded, (Doc. 17), and on February 6, 2025, Ronsick filed affidavits in support of his response, (Doc. 19).  On February 14, 2025, Chinese Kenda replied, (Doc. 21), which American Kenda joined, (Doc. 22).

## III.    DISCUSSION

Chinese Kenda argues it should be dismissed from this action for lack of sufficient minimum contacts to extend personal jurisdiction over it.  (Doc. 5 at 1, 3–11.)  In support, Chinese Kenda submitted a declaration from Lin, Hsi Tu, its Vice General Manager.  (Doc. 5-1 (the "Lin Declaration").)  Chinese Kenda also argues that Ronsick's claims are barred by the statute of limitations and should be dismissed.  (Doc. 5 at 11–15.)  American Kenda joins Chinese Kenda's motion with regard to its statute-of-limitations argument.  (Docs. 7, 22.)  Each argument is taken in turn.

### A.  Personal Jurisdiction

#### 1.  Legal Standard

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the

plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quotation marks omitted). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). However, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (citation omitted).

In determining whether personal jurisdiction exists, a court may consider affidavits or written materials. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If written materials are considered, a plaintiff is not required to prove jurisdictional facts by a preponderance of the evidence at this stage, because then a "defendant [could] obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials." *See id.* Indeed, "if both sides submit affidavits, then conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (citation modified). Additionally, the documents submitted by the plaintiff in support of jurisdiction "are construed in the light most favorable to the plaintiff." *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990) (quotation marks omitted). Ultimately, "if a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc*, 557 F.2d at 1285.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing Ariz. R. Civ. P. 4.2(a)). Accordingly, whether this Court has "personal jurisdiction over [Chinese Kenda] is subject to the terms of the Due Process

- 3 -

Clause of the Fourteenth Amendment." *See id.*

"Constitutional due process requires that defendants have certain minimum contacts with a forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotation marks omitted).  Minimum contacts exist "if the defendant has continuous and systematic general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (quotation marks omitted).  "In giving content to that formulation, [courts have] long focused on the nature and extent of the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation marks omitted).  Courts have specific jurisdiction over a nonresident defendant if three requirements are met:

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation omitted).

### 2. **Analysis**

Chinese Kenda argues that it must be dismissed for lack of personal jurisdiction because it is not at home in Arizona, (Doc. 5 at 8–11), and it does not have sufficient contacts with Arizona just because its product "ultimately found its way to Arizona through some unknown distribution chain." (*Id.* at 4–8).  The Lin Declaration states that Chinese Kenda is a "foreign corporation organized and existing under the laws of the People's Republic of China with its principal place of business" in China.  (Doc. 5-1 ¶ 2.)  The declaration also states that Chinese Kenda (1) has never been licensed to do business in Arizona; (2) has "never solicited business or advertised in Arizona, nor directed any

marketing or promotional activities to Arizona residents"; (3) has never had or sent employees or agents "involved in the sale or marketing of its products within Arizona"; (4) does not conduct business in Arizona and "has never participated in the sale, distribution, resale, financing, or servicing of any products in Arizona"; (5) has never had a physical presence in Arizona; (6) "does not direct any sales of products designed, manufactured, assembled, or distributed by [it] in Arizona"; (7) does not "direct any distributors to sell its products in Arizona"; (8) has not entered into any contracts "for the purpose of selling, promoting, advertising, or supplying any product or service within Arizona"; (9) has no "affiliated corporate entities, including parent, subsidiary, joint ventures, or any other organization, that maintain an office or do business in Arizona"; and (10) "does not engage in internet sales targeting customers in Arizona" and "has no direct sales to the United States, including Arizona." (*See id.* ¶¶ 6–16, 18–19.)  Thus, Chinese Kenda argues, it did not direct activities towards Arizona or purposefully avail itself of the privilege of conducting business in Arizona.  (Doc. 5 at 6.)

Ronsick argues that Chinese Kenda is subject to personal jurisdiction in Arizona because Chinese Kenda intended to sell tires in America and, "correspondingly" in Arizona, citing exports to the United States of "approximately $34,530,000," so Chinese Kenda purposefully availed itself through "activities in the United States." (Doc. 17 at 11, 13.)  Ronsick also argues that Chinese Kenda has "distributors and retailers throughout the United States," including "eighteen retailers who sell Kenda tires in the Phoenix area." (*Id.* at 12.)  In the alternative, Ronsick requests jurisdictional discovery. (*Id.* at 14–16.)

Ronsick does not argue that general jurisdiction exists over Chinese Kenda.  (*See id.* at 10–14 (arguing specific jurisdiction exists).)  Accordingly, only the parties' arguments concerning specific jurisdiction need be addressed.

Based on the unrebutted evidence in the Lin Declaration, Chinese Kenda does not have sufficient minimum contacts to subject it to specific jurisdiction in Arizona.  To satisfy purposeful availment, Chinese Kenda "must have deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual

relationship centered there." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (citation modified). Mere "placement of a product into the stream of commerce, without more" does not suffice, "even if the defendant is aware that the stream of commerce may or will sweep the product into the forum state." *Id.* (citation modified). Thus, it is not enough that Chinese Kenda's products made it into the stream of commerce of Arizona to subject Chinese Kenda to personal jurisdiction, without more. *See id.*

Although Ronsick argues that "Kenda's website lists tire retailers in Arizona that sell Kenda tires," (Doc. 17 at 12), such a fact does not demonstrate that Chinese Kenda "deliberately navigates the stream of commerce towards [Arizona], either by introducing [the tires] into [Arizona] itself, or by creating, controlling, or employing the distribution system which does so." *See Yamashita*, 62 F.4th at 504 (citation modified). This is particularly so given Chinese Kenda's unrebutted evidence that it does not itself "direct[] the sales of its products in Arizona"; "participate[] in the sale, distribution, resale, financing, or servicing of any products in Arizona"; "direct any distributors to sell its products in Arizona"; or maintain any presence in Arizona to do business. (*See* Doc. 5-1 ¶¶ 6–7, 10–12, 19). *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023, 1025 (9th Cir. 2017) (holding that plaintiff failed to establish minimum contacts where the defendants submitted unrebutted evidence that they did "not conduct any activities within the state of California" or "target California via marketing or advertising").

Moreover, the Ninth Circuit has rejected the argument that a "website describing [a company's] Arizona shops" can establish minimum contacts absent other contacts. *See LNS*, 22 F.4th at 863. The *LNS* court also rejected the similar argument that a company's "operation of repair shops in Arizona supplie[d] the necessary minimum contacts" where the record "establishe[d] that [the company was] not authorized to do business in Arizona, ha[d] no offices or employees in Arizona, and own[ed] no property in the state," as Chinese Kenda has established here. (*See* Doc. 5-1 ¶¶ 6–7, 9–11, 16.) *LNS*, 22 F.4th at 863.

Ronsick's arguments about Chinese Kenda's alleged continental or national marketing efforts or exports are likewise insufficient. (*See* Doc. 17 at 11–13.) Even if

Ronsick rebutted the Lin Declaration's statement that Chinese Kenda "has no direct sales to the United States," (Doc. 5-1 ¶ 18), at best he would establish only nationwide contacts, as opposed to "contacts with Arizona specifically," which are "clearly insufficient to render [Chinese Kenda] subject to personal jurisdiction in Arizona." *See LNS*, 22 F.4th at 862; *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality opinion) ("Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State."). In other words, Ronsick has not established that Chinese Kenda "performed some type of affirmative conduct which allow[ed] or promote[d] the transaction of business within" Arizona specifically. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).

Finally, Ronsick argues that "American Kenda issued a recall related to certain Kenda tires" that were "manufactured at Kenda's Taiwan plant," which is "[a]nother example of Kenda and its various entities availing itself of the American market." (Doc. 17 at 13.) But even assuming *American Kenda's* recall was directed to Arizona specifically rather than nationwide, *Chinese Kenda* is not implicated by actions taken by subsidiaries or affiliated entities, without more. (Doc. 5-1 ¶¶ 12, 14 (stating that Chinese Kenda does not direct sales or distributors in Arizona and is not affiliated with any entity that does business in Arizona).) *See Williams*, 851 F.3d at 1024–25 (holding that, to the extent an agency theory can establish specific jurisdiction, a plaintiff must show that "the parent company must have the right to substantially control its subsidiary's activities"); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("It is well established that, as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other . . . .").

Ronsick's cited cases do not compel a different result. (*See* Doc. 17 at 12–13.) In *Ford*, the Court determined that Ford was subject to personal jurisdiction in states in which Ford itself did "substantial business" and "actively [sought] to serve the market for

1  automobiles and related products *in those States*." 592 U.S. at 361 (emphasis added). Ford
2  thus conceded that it had "purposefully availed itself of the privilege of conducting
3  activities in both places." *Id.* (citation modified); *see also id.* at 365 ("Small wonder that
4  Ford has here conceded 'purposeful availment' of the two States' markets."). What was at
5  issue in that case was whether Ford's conceded activities were "sufficiently connect[ed] to
6  the suits" such that specific jurisdiction was satisfied. *See id.* at 361. Here, Chinese Kenda
7  disputes whether it does any business in Arizona under the purposeful availment prong of
8  the specific jurisdiction test, so *Ford* does not help Ronsick.

9      In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Court held
10  that minimum contacts did *not* exist where the relevant party did not engage in any "activity
11  whatsoever" in the forum state: the party did not "close sales or perform services there" or
12  "solicit . . . business there either through salespersons or through advertising reasonably
13  calculated to reach the State." *Id.* at 295. These circumstances are the same here. (*See*
14  Doc. 5-1 ¶¶ 8 ("Chinese Kenda has never solicited business or advertised in Arizona, nor
15  directed any marketing or promotional activities to Arizona residents."), 10 ("Chinese
16  Kenda does not transact or conduct business in Arizona."), 12 ("Chinese Kenda does not
17  direct any sales of products designed, manufactured, assembled, or distributed by Chinese
18  Kenda in Arizona. Nor does it direct any distributors to sell its products in Arizona."), 19
19  ("Chinese Kenda has never directed the sales of its products in Arizona . . . .").) *World-*
20  *Wide Volkswagen* thus weighs in favor of Chinese Kenda's position, not Ronsick's.

21      So too with *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984), where the Court held
22  that a party had sufficient minimum contacts with the forum state based on a "regular
23  circulation of magazines in the forum State" totaling "thousands of magazines." *Id.* at 773–
24  74. Chinese Kenda engages in no such regular sales, marketing, or business in Arizona.
25  (*See* Doc. 5-1 ¶¶ 8, 10, 12, 18–19.) *Keeton* thus does not show that personal jurisdiction is
26  proper over Chinese Kenda here.

27      Accordingly, Ronsick has not established that Chinese Kenda itself engaged in any
28  conduct within or directed to Arizona. *See Holland Am. Line*, 485 F.3d at 459 ("Wärtsilä

1   itself has not put *any* products into the stream of commerce that might have ended up in

2   the forum, whether through a distributorship agreement or otherwise.  That alone ends the

3   inquiry.").  Because Ronsick has not met his burden to show that sufficient minimum

4   contacts exist to subject Chinese Kenda to personal jurisdiction, Chinese Kenda's motion

5   is granted.

### 3. **Jurisdictional Discovery**

7       Finally, Ronsick's request for limited jurisdictional discovery is denied.  (Doc. 17

8   at 14–16.)  "A district court may, but is not required to, allow discovery to help determine

9   whether it has personal jurisdiction over a defendant."  *Monje v. Spin Master, Inc.*, 2013

10  WL 2369888, at *2 (D. Ariz. 2013).  "Discovery should ordinarily be granted where

11  pertinent facts bearing on the question of jurisdiction are controverted or where a more

12  satisfactory showing of the facts is necessary."  *Butcher's Union Loc. No. 498, United Food*

13  *& Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quotation marks

14  omitted).  Here, the evidence Chinese Kenda submitted with its motion is unrebutted and

15  therefore not controverted.  Ronsick argues that he "is a stranger to Kenda Rubber's

16  contacts with the United States and Arizona and other issues related to jurisdiction," (Doc.

17  17 at 14), but it is unclear how limited discovery could provide a "more satisfactory

18  showing of the facts" to rebut Chinese Kenda's unequivocal evidence, *Butcher's Union*,

19  788 F.2d at 540.  Ronsick argues that discovery would include

> the number of Kenda tires sold in the United States during the past several
> years and gross sales amount for these tires; the total marketing dollars spent
> by Kenda in the United States during the past several years; the number of
> original equipment Kenda tires manufactured for the United States and the
> number of original equipment tires on vehicles sold in the United States;
> Kenda's market share growth in the United States during the past few years;
> [and] the relationship between American Kenda Rubber and other Kenda
> entities.  Also of interest are Kenda's relationship with its distributors and
> retailers especially those entities that Kenda has designated as authorized
> retailers.

27  (Doc. 17 at 16.)  Such discovery would be largely irrelevant given that it is Chinese Kenda's

28  purposeful activities directed at *Arizona* that matter, not its activities directed nationwide.

*See LNS*, 22 F.4th at 862.  Moreover, Ronsick's argument amounts to nothing more than "bare allegations in the face of specific denials" by Chinese Kenda, which is an "insufficient reason[] for a court to grant jurisdictional discovery." *Yamashita*, 62 F.4th at 507 (citation omitted).  Given Chinese Kenda's robust evidence that it has not engaged in any activity in Arizona or directed affiliated entities to engage in activity in Arizona, jurisdictional discovery is not warranted.  *See id.* at 508 (affirming denial of jurisdictional discovery where it would "be little more than a fishing expedition seeking support for jurisdictional theories . . . which [the defendants had] specifically denied via sworn statements" because "bare allegations are trumped by sworn statements to the contrary").

## B.  **Failure to State a Claim**

Although the Court grants Chinese Kenda's motion to dismiss for lack of personal jurisdiction, the Rule 12(b)(6) arguments will still be addressed as to American Kenda because American Kenda joined Chinese Kenda's arguments.  (*See* Docs. 7, 22.)  American Kenda argues that Ronsick's claims are barred by the statute of limitations.  (*See* Doc. 5 at 11–13.)  It states that Ronsick's causes of action accrued on October 31, 2021—when the accident occurred, (*see* Doc. 1-3 ¶ 13)—and suit must have been filed by October 31, 2023.  (Doc. 5 at 11.)  *See* Ariz. Rev. Stat. § 12-542(1) (two-year statute of limitations applies to claims arising out of "injuries done to the person of another").  Because Ronsick filed this action on November 3, 2023, American Kenda argues, his claims were untimely and no basis for tolling the statute of limitations applies.  (*See* Doc. 5 at 11–15.)

Ronsick argues that he "suffered severe injuries" from the accident that "necessitated his hospitalization," and "narcotic medications with strong side effects" rendered him incapacitated.  (*See* Doc. 17 at 7.)  He argues that his claims thus "did not accrue until his discharge from the hospital on November 11, 2021 at the earliest."  (*Id.* at 9.)  Ronsick attaches some evidence with his motion, arguing that the motion should be converted into a motion for summary judgment.  (*See id.* at 5–6.)

In reply, American Kenda maintains that Ronsick's cause of action accrued on October 31, 2021, arguing that the records Ronsick submitted show that he was alert after

1    the accident and even "informed providers that his accident resulted from the rear tire of

2    his motorcycle blowing out." (*See* Doc. 21 at 3–5.)

3               **1.**      **Legal Standard**

4          "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when

5    the running of the statute of limitations is apparent on the face of the complaint." *Holt v.*

6    *County of Orange*, 91 F.4th 1013, 1017 (9th Cir. 2024) (citation modified). Further, the

7    motion can "be granted only if the assertions of the complaint, read with the required

8    liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v.*

9    *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also Supermail Cargo, Inc. v.*

10    *United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) ("[A] complaint cannot be dismissed

11    unless it appears beyond doubt that the plaintiff can prove no set of facts that would

12    establish the timeliness of the claim."). Thus, if there are "factual and legal issues [that]

13    are not sufficiently clear to permit [courts] to determine with certainty whether [a tolling

14    doctrine] could be successfully invoked," the complaint should not be dismissed.

15    *Supermail Cargo*, 68 F.3d at 1207. But it is "not error to decide the statute of limitations

16    question on a motion to dismiss" if "all facts necessary to decide [the issue] are in the

17    record." *Est. of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).

18          Additionally, "to invoke the benefit of tolling, the plaintiff must allege facts that, if

19    believed, would provide a basis for tolling," and "[s]uch facts must normally be alleged in

20    the complaint." *Udom v. Fonseca*, 846 F.2d 1236, 1238 (9th Cir. 1988). The same is true

21    if the plaintiff seeks to apply the discovery rule to delay a claim's accrual. *See Martin v.*

22    *Gen. Motors LLC*, 641 F. Supp. 3d 659, 661 (D. Ariz. 2022) ("[W]hen it appears on the

23    face of the complaint that an action may be barred by limitations, the burden is on the

24    plaintiff to establish that the statute has been tolled." (alteration in original) (quoting *Bailey*

25    *v. Super. Ct.*, 694 P.2d 324, 328 (Ariz. Ct. App. 1985))); *Cavan v. Maron*, 182 F. Supp. 3d

26    954, 962–63 (D. Ariz. 2016); *see also Kretsch v. Barton*, 2024 WL 962181, at *3 (D. Ariz.

27    2024) ("Arizona case law clearly places the burden of establishing the discovery rule on

28    the plaintiff on a motion to dismiss."). But if the discovery rule is properly established,

1    "the Arizona Supreme Court has generally favored use of the discovery rule . . . and has

2    disfavored the defense of statute of limitations."  *FDIC v. Jackson*, 133 F.3d 694, 698 (9th

3    Cir. 1998) (quotation marks omitted).

### 2.    Analysis

5        As an initial matter, the Court declines to convert the motion to dismiss into a motion

6    for summary judgment.  Although Ronsick attached evidence to his response, the record is

7    not developed enough at this stage to analyze the issue under a summary judgment

8    standard.   Accordingly, the evidence Ronsick submitted with his response will not be

9    considered.  *See, e.g.*, *In re Acadia Pharms. Inc. Sec. Litig.*, 2020 WL 2838686, at *3 (S.D.

10   Cal. 2020) ("As the language of [Rule 12(b)(6)] suggests, federal courts have complete

11   discretion to determine whether or not to accept the submission of any material beyond the

12   pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby

13   converting the motion, or to reject it or simply not consider it." (quoting Wright & Miller,

14   5C Fed. Prac. & Proc. Civ. § 1366, at 159)).

15       Having considered the SAC's allegations, American Kenda's motion will be

16   granted.  According to the SAC, the accident occurred on October 31, 2021.  (Doc. 1-3

17   ¶ 13.)  By arguing that his "post-crash condition establishes [that] the statute of limitations

18   should be tolled," (Doc. 17 at 6 (citation modified)), and that the "discovery rule applies,"

19   (*id.* at 9 (citation modified)), Ronsick appears to not dispute that the statute of limitations

20   for his claims is two years or that he was required to have brought suit by October 31, 2023

21   unless some form of tolling or delay in claim accrual applies.  (*See id.* at 6–9.)  Ariz. Rev.

22   Stat. § 12-542(1).

23       Although Ronsick argues that the statute of limitations should be tolled or the

24   discovery rule applied, Ronsick bases his arguments on evidence outside of the record, and

25   none of the facts in his briefing are alleged in the SAC.  (*See* Doc. 1-3 ¶¶ 11–18.)  The SAC

26   alleges that Ronsick was "transported from the scene and to the emergency room where he

27   underwent treatment" and was "hospitalized for approximately three weeks," (*id.* ¶ 18), but

28   this allegation in and of itself does not establish either that Ronsick was of an "unsound

1    mind," (Doc. 17 at 7 (arguing this basis for tolling under Ariz. Rev. Stat. § 12-502)), or

2    that Ronsick did not have sufficient knowledge of his claims for them to accrue, (*id.* at 9

3    (arguing for application of the discovery rule)).   As mentioned, the plaintiff must plead

4    *facts* sufficient to invoke tolling or the discovery rule, and Ronsick has not done so.  *Udom*,

5    846 F.2d at 1238; *Martin*, 641 F. Supp. 3d at 661.

6          Thus, because it is "apparent on the face of the complaint" that the statute of

7    limitations ran on Ronsick's claims, *see Holt*, 91 F.4th at 1017, and because Ronsick has

8    not pled sufficient facts to establish that tolling or the discovery rule should be applied, the

9    motion to dismiss is granted.   Ronsick's response and the evidence he submitted

10   demonstrate,[3] however, that he should be granted leave to amend to allege facts that he

11   believes would warrant applying tolling or the discovery rule.  *See, e.g.*, *Von Saher v.*

12   *Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (affirming

13   dismissal on statute of limitations grounds but granting leave to amend on remand for the

14   plaintiff to "amend her complaint to allege [facts] to establish diligence" to apply the

15   discovery rule).

16         Accordingly,

17   **IT IS ORDERED** that the Kenda Defendants' motion to dismiss (Docs. 5, 7

18   (joinder)) is **granted**.

19   **IT IS FURTHER ORDERED** that Chinese Kenda is dismissed from this action

20   for lack of personal jurisdiction.  The Clerk of Court shall terminate Chinese Kenda as a

21   defendant.

22   ///

23   ///

24   ///

25   ///

26   ///

27

28
_____
[3]      "The Court may consider matters extrinsic to the [complaint] when deciding
whether or not leave to amend would be futile."  *Demekpe v. County of Los Angeles*, 2015
WL 13237302, at *6 (C.D. Cal. 2015).

**IT IS FURTHER ORDERED** that Ronsick may have **14 days** to file a Third Amended Complaint ("TAC") limited to curing the deficiencies raised in this Order as to his claims against American Kenda.  Consistent with LRCiv 15.1, Ronsick shall file, concurrently with any TAC, a notice of filing the amended pleading that attaches a copy of the amended pleading indicating in what respect it differs from the SAC.

Dated this 19th day of September, 2025.

Honorable Sharad H. Desai
United States District Judge